```
                    UNITED STATES DISTRICT COURT
                      DISTRICT OF CONNECTICUT

   MIGUEL VIRUET,                    :
                                     :
      Plaintiff,                     :
                                     :
      v.                             :    No. 3:03CV1345(DJS)
                                     :
   STATE OF CONNECTICUT,             :
   DEPARTMENT OF CORRECTIONS;        :
   JOHN ARMSTRONG, former            :
   Commissioner of the Department    :
   of Corrections;                   :
                                     :
      Defendants.                    :
```

## MEMORANDUM OF DECISION

On August 5, 2003, plaintiff Miguel Viruet filed this action alleging that defendants, the State of Connecticut Department of Corrections ("DOC") and former DOC Commissioner John Armstrong discriminated against him on the basis of his race, in violation of Title VII of the Civil Rights Act, 42 U.S.C. § 2000e et seq., Viruet also alleges that Armstrong violated his right to equal protection under the law, as guaranteed by the Fourteenth Amendment to the U.S. Constitution.  On October 12, 2004, pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, defendants filed a motion for summary judgment.  (See Dkt. # 22). For the reasons set forth herein, defendants' motion is **DENIED**.

### I. FACTS

Miguel Viruet claims that Armstrong demoted him because he is Hispanic or because Armstrong reacted irrationally to pressures extraneous to the question of the proper sanction to

impose upon Viruet.  Viruet was appointed as a Correction Officer by the DOC on February 11, 1981, was promoted to the rank of major in 1996, and was assigned to the Carl Robinson Correctional Institution ("Robinson C.I.") on February 1, 1999.  Viruet retired from his position effective April 1, 2003.  At all times relevant to this lawsuit, Armstrong was the DOC Commissioner, which is the highest ranking official in the DOC.

Prior to his retirement, on April 5, 2002, Armstrong demoted Viruet from the rank of major to the rank of correction officer and reassigned Viruet to the Willard/Cybulski Correctional Institution.  Armstrong imposed the demotion as a sanction for conduct exposed during the DOC Security Division's investigation of a complaint filed by Captain Joel Crescentini, an officer under Viruet's command, on September 10, 2001.  Crescentini alleged that he had been subjected to degrading  harassment, which culminated in an incident where he received a pornographic picture referencing his wife, who is a fellow DOC employee.  In a voluntary statement to a DOC investigator, Viruet admitted to sending Crescentini, and other officers under his command, e-mail messages containing graphic language: (1) a message dated November 10, 1999 referencing a white stain on Crescentini's uniform pants, attaching a photo of the stain, speculating that the stain was caused by an "inappropriate erotic response," and stating that Crescentini locked himself in the bathroom once the

stain was discovered, (dkt. # 24, Ex. 10D); (2) a message dated August 16, 2000 calling Crescentini "Pato Maricon," meaning homosexual, and "Pendejo," meaning wimp, in Spanish, and stating that another supervisor was "always in your ass," (id., Ex. 10E); (3) a message dated August 16, 2001 referencing an incident where another DOC employee placed covers of pornographic videocassettes in Crescentini's video equipment cabinet, and accusing Cresentini of dubbing homosexual pornographic movies with this equipment (see id., Ex 10F); and (4) a message dated August 24, 2001 calling Crescentini, "BITCH," (id., Ex. 10G).  Viruet stated that his e-mail messages were examples of routine joking and teasing that occurred amongst him, Crescentini, and other supervisory personnel at Robinson C.I.

Armstrong imposed sanctions upon Viruet as a result of the investigation into Crescentini's complaint.  The investigators concluded that Viruet violated the following provisions of Administrative Directive 2.17:

    5.    <u>Standards of Conduct</u>

        A.    Each Department employee shall:
            * * *
            12.    Act in a professional manner showing respect to other employees and the public.
            15.    Maintain appropriate demeanor at all times.
            * * *
        B.    The following behavior shall be strictly prohibited:
            * * *
            10.    Engage in abusive or obscene language,

>                   threats and/or intimidating behavior.
>             11.   Engage in unprofessional or illegal
>                   behavior, both on an off duty, that
>                   could in any manner reflect negatively
>                   on the Department of Correction.
>                               * * *
>             16.   Engage in behavior which is sexually,
>                   emotionally, or physically abusive
>                   toward the public, staff or inmates.

(Dkt. # 24, Ex. 4). After a pre-disciplinary hearing, and reviewing the recommendations of other DOC officers, Armstrong demoted Viruet from the rank of major to the rank of correction officer, effective April 5, 2002. On November 22, 2002, as a result of a grievance challenging Armstrong's decision to demote Viruet, the Employee's Review Board reinstated Viruet to the rank of major, effective April 5, 2002, and suspended Viruet for five days without pay.

## II.  DISCUSSION

Viruet alleges that defendants demoted him in violation of Title VII of the Civil Rights Act of 1964 and the Equal Protection Clause of the Fourteenth Amendment. The factual basis for Viruet's claims is that Armstrong imposed disproportionately severe discipline upon him in relation to other officers outside the protected class. Defendants claim that Armstrong's decision to demote Viruet was not the product of illegal discrimination or otherwise irrational.

### A.  STANDARD

A motion for summary judgment may be granted "if the

pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  Summary judgment is appropriate if, after discovery, the nonmoving party "has failed to make a sufficient showing on an essential element of [its] case with respect to which [it] has the burden of proof." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  "The burden is on the moving party 'to demonstrate the absence of any material factual issue genuinely in dispute.'"  American Int'l Group, Inc. v. London Am. Int'l Corp., 664 F.2d 348, 351 (2d Cir. 1981) (quoting Heyman v. Commerce & Indus. Ins. Co., 524 F.2d 1317, 1319-20 (2d Cir. 1975)).  A dispute concerning a material fact is genuine "'if evidence is such that a reasonable jury could return a verdict for the nonmoving party.'"  Aldrich v. Randolph Cent. Sch. Dist., 963 F.2d 520, 523 (2d Cir. 1992) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)).  The court must view all inferences and ambiguities in a light most favorable to the nonmoving party.  See Bryant v. Maffucci, 923 F.2d 979, 982 (2d Cir. 1991).  "Only when reasonable minds could not differ as to the import of the evidence is summary judgment proper."  Id.

### B.   DISCRIMINATION CLAIM

Viruet alleges that the DOC, through Armstrong,

discriminated against him on the basis of his race. Specifically, Viruet claims that Armstrong imposed a disproportionately severe sanction against him on account of his race.

In McDonnell Douglas Corporation v. Green, the Supreme Court established an "allocation of the burden of production and an order for the presentation of proof in Title VII cases." 411 U.S. 792, 802 (1973). Under that framework, a plaintiff alleging a violation of the federal anti-discrimination statutes establishes a prima facie case by showing he (1) was a member of a protected class; (2) was qualified for the position he held; (3) suffered an adverse employment action; (4) in circumstances giving rise to an inference of discrimination. See Schnabel v. Abrahmson, 232 F.3d 83, 87 (2d Cir. 2000); see also Texas Dept. Of Community Affairs v. Burdine, 450 U.S. 248, 253 (1985) ("The plaintiff must prove by a preponderance of the evidence that she applied for an available position for which she was qualified, but was rejected under circumstances which give rise to an inference of unlawful discrimination."). If the plaintiff establishes a prima facie case, the employer has the burden of articulating a "legitimate, nondiscriminatory reason" for the adverse employment action. Stern v. Trustees of Columbia University, 131 F.3d 305, 312 (2d Cir. 1997). If the employer does so, the plaintiff must prove by a preponderance of the

evidence that the employer's proffered explanation is unworthy of credence, and that the true reason for the employer's action was unlawful discrimination.  See id.   The ultimate question in an employment discrimination case is whether the evidence offered can reasonably and logically give rise to an inference of discrimination under all of the circumstances.  See Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 148 (2000); Bickerstaff v. Vassar College, 196 F.3d 435, 448 (2d Cir. 1999).

    The parties have met their respective burdens with respect to the first two steps of the burden-shifting analysis.  Viruet has established that he was within the protected class, he was qualified to hold the rank of major in the DOC, he suffered an adverse employment action, and other officers with command authority involved in the same incidents received less severe sanctions for similar conduct.  Defendants have met their burden of proffering a non-discriminatory reason for their actions by stating that Viruet was demoted as punishment for violating Administrative Directive 2.17.

    Viruet may be able to meet his burden of demonstrating that the penalty he received was meted out for a discriminatory purpose.  Viruet points out the fact that McDonald, who is Caucasian and held the same rank as Viruet at Robinson C.I., received a written reprimand for admitting his "involvement in a practical joke which involved planting video tapes of a sexual

nature in the office of another supervisor" and sending "an email to this same individual referring to him in a derogatory manner; using a profane epithet." (Dkt. # 24, Ex. 21). The conduct for which McDonald received a written reprimand is no different than the conduct for which Viruet received a demotion from major to correction officer; a reasonable trier of fact could therefore conclude that the fact that Viruet is Hispanic motivated Armstrong to impose disparate punishments. In reaching this conclusion, the court does not question Armstrong's authority to demote Viruet as punishment for his actions, but rather the court finds that, at this stage of the proceedings, illegal discrimination cannot be ruled out given the level of disparity in the punishments meted out to commanding officers of the same rank at the same facility for the same type of conduct.

C. EQUAL PROTECTION

Viruet argues that Armstrong violated his right to equal protection under the law by imposing an disproportionately harsh sanction upon him for his conduct described in the investigative report. The Fourteenth Amendment to the United States Constitution provides that "no state shall . . . deny to any person within its jurisdiction the equal protection of the laws," and is "essentially a direction that all persons similarly situated should be treated alike." City of Cleburne, Texas v. Cleburne Living Center, 473 U.S. 432 (1985). Traditionally,

-8-

equal protection claims were premised on the idea that the plaintiff was a member of a protected class. The Supreme Court has held, however, that a plaintiff need not be a member of a traditionally "protected class" in order to allege an equal protection violation. See Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000). Instead, a "class of one" may maintain an equal protection claim "where the plaintiff alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." Id.

"In order to succeed on a 'class of one' claim, the level of similarity between plaintiffs and the persons with whom they compare themselves must be extremely high." Neilson v. D'Angelis, 409 F.3d 100, 104 (2d Cir. 2005). As such, a plaintiff who brings a "class of one" claim must prove that "(i) no rational person could regard the circumstances of the plaintiff to differ from those of a comparator to a degree that would justify the differential treatment on the basis of a legitimate government policy; and (ii) the similarity in circumstances and difference in treatment are sufficient to exclude the possibility that the defendant acted on the basis of a mistake."[1] Id. at 105.

---

[1] Viruet has disavowed any reliance upon a selective prosecution equal protection theory.

Viruet has presented sufficient evidence to bring his equal protection claim before a jury.  Even under the more exacting standard for similarity set forth herein, McDonald and Viruet are similarly situated employees.  Armstrong has proffered no reason for the disparity in the sanctions imposed upon Viruet and McDonald.  The record reveals that Armstrong argued before the Employee's Review Board that he had lost confidence in Viruet's ability to lead.  The Employee's Review Board, however, rejected this argument, and a reasonable jury could do so as well.  With no rational basis for the disparate treatment of two virtually identical individuals, Viruet could prove to a jury that there was no rational basis for Armstrong's decision.  See Harlen Associates v. The Incorporated Village of Mineola, 273 F.3d 494, 500 (2d Cir. 2001) (stating that a government official's decision "can be considered irrational only when [the official] acts with no legitimate reason for [his or her] decision.") (internal quotation marks omitted).

Further, Armstrong is not entitled to qualified immunity at this juncture because

> [t]he issue of rational treatment is not sufficiently different from the issue of whether [Armstrong] acted in an "objectively reasonable" manner so as to lead [the court] to resolve the latter issue as a matter of law where [the court] has concluded in the face of disputed issues of fact that the jury must resolve the former issue.

Cobb v. Pozzi, 363 F.3d 89, 112 (2d Cir. 2004) ("[I]t is

difficult for us to see how conduct that is irrational (if so found by a jury) could nevertheless be objectively reasonable.").

### III. CONCLUSION

For the foregoing reasons, defendants' motion for summary judgment (dkt. # 22) is **DENIED.** The parties shall file a joint trial memorandum on or before May 30, 2006.

So ordered this 29th day of March, 2006.

**/s/DJS**
_____
**DOMINIC J. SQUATRITO
UNITED STATES DISTRICT JUDGE**